IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cr-00365-DHU |
| | ) | |
| vs. | ) | |
| | ) | |
| JOEL RUIZ, | ) | |
| | ) | |
| Defendant. | ) | |

REPLY TO GOVERNMENT'S RESPONSE (Doc. 28)

COMES NOW the defendant, JOEL RUIZ, by and through counsel, Amanda Lavin, Assistant Federal Public Defender, and replies to the government's response to his appeal of the detention order (Docs. 21 and 23).

As a preliminary matter, Mr. Ruiz's appeal of the detention order entered by the Magistrate Judge is properly brought under 18 U.S. Code § 3145(c). Such appeals are commonly brought before the United States District Court Judges in the District of New Mexico, and the government cites to no authority that indicates an appeal from a detention order entered by a magistrate judge cannot be heard by a district court judge under 18 U.S. Code § 3145(c). The Tenth Circuit opinion referenced in footnote one of the government's response merely discusses the Tenth Circuit's ability to exercise jurisdiction to review a district court's order of detention under 18 U.S.C. § 3145(c); it does not say that a defendant "cannot apply for relief under that section," in the context of an appeal from a magistrate detention order, as the government suggests. *United States v. Portillo-Camargo*, No. 22-1244, 2022 WL 5434556, at *1 (10th Cir. Oct. 7, 2022). Just because an appeal from a district court's order of detention can be brought under 18 U.S.C. § 3145(c) to a

circuit court, does not mean this section precludes an appeal from a magistrate order of detention to the district court.

Risk of flight

Mr. Ruiz's prior court record shows he has a history of appearing in court as required as well as successfully completing probation. Moreover, his three failures to appear over the past 24 years are not deliberate attempts to evade the jurisdiction of the court. For example, in the 1998 case referenced by the government on page 16 of its response, review of the court record in this case shows Mr. Ruiz appears to have missed court one time for failing to appear pursuant to a summons on July 1, 1998. See attached court record, Exhibit A. A hearing was subsequently set on August 14, 1998 to address his failure to appear, and it appears he attended that hearing as conditions of release were set. There are no other failures to appear documented in that record, and it appears Mr. Ruiz pleaded guilty to the misdemeanor offense of negligent use of a deadly weapon, was sentenced to probation, and was successfully discharged from said term of probation. Exhibit A.

When Mr. Ruiz was arrested for a DUI on June 25, 2007, it appears he attended all court appearances, save one (not two as asserted by the government), between his date of arrest and eventual dismissal of the case on October 16, 2008. Exhibit B. When Mr. Ruiz was arrested for a subsequent DUI on March 3, 3008, he attended all court appearances as evidenced by the court record in that case. Exhibit C. It does appear that while he was on probation for this DUI conviction, there was an order to show cause for failure to pay, as well as a failure to appear notice issued on October 21, 2009. However, following this failure to appear, Mr. Ruiz successfully completed probation on February 5, 2010. Mr. Ruiz's only other instance of failure to appear occurred while he had a pending traffic violation for leaving the scene of an accident, as referenced

in the government's response on page 16. He explained to the court in his request for cancellation of the bench warrant that he did not have notice of the court hearing (government's exhibit 6), and the court quashed the warrant. Exhibit D.

Mr. Ruiz's denial of the accusations in this case should not be held against him. He was under no obligation to cooperate with authorities while the allegations were under investigation. He voluntarily submitted to an interview with federal law enforcement agents and denied the allegations. Later, he declined to participate in a polygraph examination. The government now represents to the court that this was an attempt to "evade and thwart" law enforcement. Mr. Ruiz's exercise of his constitutional right against compelled self-incrimination should not be a reason to detain him.

At no point did Mr. Ruiz misrepresent to his address to counsel, the court, or law enforcement. For the past two decades, he has been employed by a nursery outside Ignacio, Colorado. He spends most of his time living and working in Colorado. For the two years preceding his arrest in this matter, when he came back to New Mexico on weekends or on other occasions while he was not working, he lived in a trailer in Bloomfield. Mr. Ruiz and his wife have rented two different trailers in Bloomfield in 2020 and 2021. Their rental contracts are attached as Exhibits E and F. Mrs. Ruiz, Mr. Ruiz's wife, typically stays with her sister, who lives in Dulce, and only sometimes stays at the Bloomfield residence. As noted above, Mr. Ruiz has primarily resided in Colorado where he was employed at the nursery. The home belonging to Mrs. Ruiz's family referenced by the government as 16257 East Jicarilla Inn, a house adjacent to the location of the alleged crimes, is a house that is described by all witness accounts contained in the discovery as uninhabitable. There are allegations that Mr. and Mrs. Ruiz have spent time at this

home in years past, however, neither of them has lived there at all during the past two to three years.

Mr. Ruiz is from Mexico and is a native Spanish-speaker. Naturally, he has learned English over the past 30-plus years he has spent living in the United States. However, he is most comfortable in Spanish. Undersigned counsel is conversant in Spanish and primarily communicates with Mr. Ruiz in Spanish or with a Spanish-language interpreter. Mr. Ruiz cannot read or write in English. While Mr. Ruiz understands some English and can speak some English, the only language he is fluent in, is Spanish. In his prior state court cases the records show he has requested a court interpreter. When he was questioned by the FBI in English, he responded in English, however, a Spanish-language interpreter clarified statements and questions throughout the interview. Mr. Ruiz is more comfortable navigating the legal system in his native Spanish language. The government's assertion that his request to have a Spanish interpreter is an insidious attempt at deceit, is illogical and unsupported by any evidence.

<u>Danger to the community</u>

The crimes Mr. Ruiz is accused of are no doubt serious in nature. This is reflected in 18 U.S.C. § 3142, which mandates a rebuttable presumption of detention for anyone charged with these offenses, as well as conditions under the Adam Walsh Act should release be deemed appropriate. The rebuttable presumption is not a presumption that cannot be overcome. Likewise, the inherently dangerous nature of the crimes Mr. Ruiz faces does not preclude his release. If he can show by a preponderance of the evidence that there are conditions of release that can be set which both assure his appearance at future court settings and safety of the community, the court should release him subject to those conditions.

Mr. Ruiz is accused of digitally penetrating two children: N.T. and A.W. N.T. told her mother and a social worker in Dulce that the abuse occurred one time. During her forensic interview, she alleged the abuse happened "10 to 20 times," and said "he would do the same thing over and over again. That's all I know." USA v. Joel Ruiz Bates No. 000023. The discovery provided thus far offers no clarification or distinction regarding the newly alleged multiple incidents of abuse. A.W. told the forensic interviewer the abuse occurred one time. The allegations offered by the government that Mr. Ruiz has victimized other children, are unsubstantiated. Law enforcement has not interviewed K.C. or M.Z. R.K. was not a victim of any alleged crime. Mr. Ruiz is innocent of these charges until a jury finds him otherwise, yet the government asks the court to take at face value the second- and third-hand accounts that Mr. Ruiz victimized children other than those named in the indictment, and paints him as a serial pedophile when there has been no finding other than of probable cause that any of the allegations in the indictment are true.

If Mr. Ruiz is released to the third-party custody of La Pasada, he will not have access to children. Since that is the only conceivable danger he would present to the community if released, this is a condition that would mitigate against any danger to the community.

The government does not believe Mr. Ruiz because he did not admit to committing the crimes he is accused of. The government construes all representations made by Mr. Ruiz as incredible and unreliable because his story does not match the alleged victims' allegations. This has no bearing in an analysis regarding release under 18 U.S.C.§ 3142. Mr. Ruiz has a right to deny the allegations made by his accusers; this should not be held against him when the court analyzes whether there are conditions of release that can be set that will assure his appearance at future court settings, or dangerousness.

Mr. Ruiz is a legal permanent resident of the United States and has resided in this country for over 30 years. He has a demonstrated history of complying with prior sentences of probation and appearing in court as required, with limited exceptions. He does in fact suffer from hypertension, which is borne out by his medical records from a clinic in Tierra Amarilla, New Mexico. Due to the sensitive nature of these records, they will be provided to the court and the government separate from this pleading. If Mr. Ruiz is released to the La Pasada halfway house he will be living in a place where there are only approximately 100 residents at a give time. He will have access to health care resources in the community, as opposed to limited resources in the crowded county jail where he has been detained for the past eight months.

WHEREFORE, for the foregoing reasons, Mr. Ruiz respectfully requests the court find he has overcome the presumption of detention under 18 U.S.C. § 3142 and release him to the third-party custody of the La Pasada halfway house, and grant any other such relief the court deems appropriate.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

 /s/ filed electronically October 20, 2022
AMANDA LAVIN
Assistant Federal Public Defender
Attorney for Defendant