IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Cr. No. 22-365-DHU

JOEL RUIZ,

        Defendant.

## **DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 29**

Defendant Joel Ruiz, by and through his counsel of record, Assistant Federal Public Defenders Emily P. Carey and Noah Gelb, respectfully submits the following brief in support of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. Mr. Ruiz submits this brief contemporaneously with his oral motion made in Court.

Rule 29 provides that "[a]fter the government closes its evidence or after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In ruling on a motion for judgment of acquittal, the court asks only "whether, taking the evidence – both direct and circumstantial, together with reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Baldridge,* 559 F.3d 1126, 1134 (10th Cir. 2009).

Mr. Ruiz moves for judgment of acquittal on the ground that the United States has failed to present sufficient proof as to each element of both charges from which a reasonable jury could conclude beyond a reasonable doubt that he is guilty of the charges against him. By way of

example, and not to the exclusion of other elements in both charged counts, no reasonable juror, having heard the evidence presented in this case, could find beyond a reasonable doubt that Mr. Ruiz is not an Indian.

The Indictment premises the United States' authority to prosecute Mr. Ruiz on 18 U.S.C. § 1152, which states, in pertinent part: "This section shall not extend to offenses committed by one Indian against the person or property of another Indian…" This statutory language is clear: where a defendant and a victim are both Indian, Section 1152 does not apply and does not provide the United States with the authority to prosecute the offense. Indeed, this is why Congress passed 18 U.S.C. § 1153.

## ARGUMENT

### A. Background of 18 U.S.C. § 1152

In *Ex Parte Kan-gi-shun-ca (otherwise known as Crow Dog)*, 109 U.S. 556 (1883), the Supreme Court held that the predecessor statute to Section 1152 foreclosed the authority of the United States to prosecute Indians for crimes committed against the person or property of another Indian.[1] *Id.* at 570–72 (concluding that Section 1152's predecessor statute applied to the facts of the case and holding that the "district court of Dakota was without jurisdiction to find or try the indictment against the prisoner"). The decision in *Kan-gi-shun-ca* directly led to Congress passing the statute now known as the Major Crimes Act (18 U.S.C. § 1153). Just three years later, the Supreme Court considered the constitutionality of that statute in *United States v. Kagama*, 118 U.S.C. 375, 383–85 (1886) (recognizing passage of Section 1153's predecessor statute as response

[1] Title 28, Section 2146 of the Revised Statutes stated, in relevant part: "The preceding section shall not be construed to extend to [crimes committed by one Indian against the person or property of another Indian, nor to] any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where by treaty stipulations the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively." *Id.* at 558.

to *Kan-gi-shun-ca* and holding it was valid exercise of congressional power). Sections 1152 and 1153, taken together with their history, leave no room for doubt: where a defendant is charged under §1152 and the alleged victim is an Indian, the defendant must be a non-Indian person. *Id.*

## B. The Tenth Circuit's Key Cases

In 2000, the Tenth Circuit had occasion to consider the ramifications of this requirement. In an initial panel opinion, the Tenth Circuit held that the status of both a defendant and victim are essential elements of a criminal charge brought under 18 U.S.C. § 1152, and it is therefore the Government's burden to prove the status of each. *United States v. Prentiss*, 206 F.3d 960, 969 (10th Cir. 2000) (hereinafter *Prentiss I*). There, the Tenth Circuit explained that no federal crime is committed under Section 1152 unless (1) the crime occurred in Indian country, and (2) the crime occurred between an Indian person and a non-Indian person. *Id.*

The Tenth Circuit revisited this question in an *en banc* decision. *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) (en banc) (hereinafter *Prentiss II*), *overruled on other grounds as recognized by United States v. Sinks*, 473 F.3d 1315, 1321 (10th Cir. 2007). In its *en banc* rehearing, the Tenth Circuit affirmed the panel's decision and conclusively held that the status of both a defendant and victim are essential elements of a crime charged under Section 1152. *Id.* at 980. As the Circuit pointed out, "essential elements" are the "constituent parts of the crime that must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Id.* at 975 (internal quotation marks, brackets, and citations omitted). In reaching its decision, the Circuit explicitly and resoundingly rejected the Government's argument that a Defendant's own status was an affirmative defense that she must raise. *Id.* at 975–80.

The *Prentiss* case returned to the panel for further consideration considering the *en banc* decision. *Id.* at 985; *United States v. Prentiss*, 273 F.3d 1277 (10th Cir. 2001) (hereinafter *Prentiss III*). In *Prentiss III*, the panel applied a two-part test to determine whether someone was an Indian: The

individual must "(1) [have] some Indian blood; and (2) [be] recognized as an Indian by a tribe or by the federal government." 273 F.3d at 1280. The panel goes on to note the various courts around the country that rely upon this test, and it recognizes that the test has its origins in a Supreme Court case from 1846. *Id.*

The *Prentiss* line of cases did not address how to determine if a person is "recognized" as an Indian. Recognition is determined using a four-factor test first used in the Tenth Circuit in *United States v. Drewry*, 365 F.3d 957, 961 (10th Cir. 2004), *vacated on other grounds by Drewry v. United States*, 543 U.S. 1103 (2005), *reinstated after remand by United States v. Drewry*, 133 Fed. Appx. 543 (2005).[2] That four-factor test is as follows:

1. Whether the person is enrolled in a tribe;

2. Whether the government has recognized the person, either formally or informally, as an Indian by providing assistance reserved only to Indians;

3. Whether the person has enjoyed the benefits of tribal affiliation; and

4. Whether the person has been socially recognized as an Indian through by residing on a reservation and participating in Indian social life.

*Id.* at 961. The Tenth Circuit again accepted this as the appropriate test for recognition in *United States v. Nowlin*, which recognized that only the first factor is dispositive if the individual is enrolled in a tribe. 555 Fed. Appx. 820, 832 (10th Cir. 2014).

### C. Establishing Indian and Non-Indian Status

Proving that a person *is* an Indian is generally a straightforward process. But proving that someone is *not* an Indian requires greater planning and investigation. It cannot be done without a clear plan in place. In *Prentiss I*, the government complained that the challenge of proving a

---

[2] The Tenth Circuit's original *Drewry* opinion was vacated because of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). On remand, the Tenth Circuit reinstated the original panel opinion after determining that there was no plain error necessitating a reversal of the appellant's conviction and sentence. *Drewry,* 133 F. App'x at 545-46.

defendant is a non-Indian were too great—that proving a negative was too difficult—and the Tenth

Circuit roundly rejected that argument and was unsympathetic to the Government's complaints:

> The government argues that if it is required to prove the Indian status of the
> defendant, the requirement would "abruptly halt almost all prosecutions of non-
> Indians who commit crimes against Indians in Indian country." Aple's Br. at 7. It
> contends that the government will be in the "untenable, if not impossible, position
> of having to prove a negative beyond a reasonable doubt." *Id.* We are not persuaded
> by this argument. Our review of the cases suggests that the government typically
> alleges and proves the inter-raciality of the offenses charged and tried under § 1152.
> . . .
> Aside from the fact that the indictment in this case fails to allege the Indian status
> of both the defendant and the victim, the government's argument implies that the
> prosecution is never required to prove a negative. However, the government is, on
> occasion, required to prove a negative at trial. See, e.g., 8 U.S.C. § 1326
> (criminalizing the re-entry into the United States after deportation and thereby
> requiring the government to prove a negative: that the defendant did not receive
> permission to re-enter the United States from the Attorney General); *United States
> v. Martinez-Morel,* 118 F.3d 710, 712 (10th Cir. 1997) (stating the elements that
> the government must prove in order to establish a § 1326 violation, including that
> the defendant was found in the United States "without the permission of the
> Attorney General").

206 F.3d at 971–72. Thus, the Tenth Circuit does not excuse the government from its burden

simply because its burden poses a challenge. Congress could ease this burden if it chose to do so.

It could establish a statutory test for Indian status that requires enrollment in a tribe and establish

a national database of enrolled tribal members which the Government could search at will and use

as evidence. But it has not done so.

Cases looking at this question have approved a totality of the evidence approach, "although

certain types of evidence, by themselves may not be sufficient." *United States v. Diaz*, 679 F.3d

1183, 1187 (10th Cir. 2012). "For example, a jury may not find Indian heritage solely 'on the basis

of their names, appearance, speech, and testimony that they did not grow up on the [particular]

Pueblo.'" *Id.* at 1187 (citing *United States v. Romero,* 136 F.3d 1268, 1274 (10th Cir. 1998),

*abrogated on other grounds by Musacchio v. United States,* 577 U.S. 237 (2016)).

In *United States v. Diaz*, the Tenth Circuit provided an example of how the government might properly go about proving an individual is not an Indian. 679 F.3d 1183 (2012). There, the victim was the non-Indian person and the government sought to prove his status by calling family members who could testify as to their ancestral background and enrollment status. *Id.* at 1187–88. The Government called the victim's father to testify, who explained that he had previously done very extensive genealogical research going back hundreds of years, which determined that neither he nor his wife had any Native American ancestry. *Id.* The father further testified that his son had never been enrolled in any tribe and had not associated himself with any tribe outside of his employment. *Id.* at 1188. The Tenth Circuit found this sufficient to prove the victim's status as a non-Indian. *Id.* While it noted that DNA testing would have been helpful evidence regarding ancestry, the lack of it did not undercut that father's testimony. *Id.* Further, given the father's direct testimony that the victim had not enrolled in a tribe, the Tenth Circuit did not find it necessary that the government go to further lengths to prove lack of enrollment, and it recognized that enrollment alone would not be enough. *Id.*

## D.  The government has provided insufficient evidence of Mr. Ruiz's alleged non-Indian status.[3]

The government has not presented sufficient evidence of Mr. Ruiz's alleged non-Indian status such that, even viewing the evidence in a light most favorable to the government, a reasonable jury could find beyond a reasonable doubt that Mr. Ruiz is not an Indian.  The United States attempted to establish non-Indian status through testimony of two witnesses: Jicarilla Apache Criminal Investigator Rome Wager and Federal Bureau of Investigations Special Agent Piere Himel.

---

[3] Counsel for Mr. Ruiz does not have transcripts of these proceedings and is relying on notes and recollection from trial testimony for this section. Upon information and belief, the facts presented here are accurate.

The government specifically asked Criminal Investigator (CI) Wager whether, during the course of his investigation, he took any steps to determine whether Mr. Ruiz was an enrolled member of a tribe.  His response was no. When redirected, CI testified that he searched two law enforcement databases – the National Crime Information Center (NCIC) and the Interstate Identification Index (known as a Triple I) and that his search showed a birthplace for Mr. Ruiz of Mexico. Notably, the NCIC and Triple I would not include tribal enrollment or affiliation information as confirmed later by Special Agent Himel. CI Wager also testified that he contacted the Department of Homeland Security. Mr. Ruiz also believes that CI Wager may have testified that he searched the enrollment for Jicarilla Apache and that Mr. Ruiz was not enrolled in that tribe.[4] He indicated that based on his investigation, he did not find any information that Mr. Ruiz is an Indian.

Special Agent Himel testified that law enforcement databases (like those searched by CI Wager) generally do not have tribal information and that one must follow up with the local enrollment office. Special Agent Himel also testified that he reviewed identifiers and photographs, photographs that appeared consistent with the identification of Mr. Ruiz, received information from another law enforcement agency, and reviewed federal documents signed by Mr. Ruiz indicating that Mr. Ruiz was born in Mexico. These things reviewed as part of his investigation led him to conclude that Mr. Ruiz is a non-Indian.

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if the evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  A court should exclude testimony for lack of personal knowledge, "if in the proper

---

[4] Counsel does not have this in her notes, but believes based on recollection, that this is an accurate statement.

exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." *Id.* (internal quotation marks and citation omitted). Mr. Ruiz made several objections during the government's presentation of evidence to the testimony of both witnesses based on lack of foundation and lack personal knowledge.  But even setting aside these objections for purposes of argument, the only possibly relevant information the agents were able to derive from the databases that they searched, and, in the case of CI Wager, through his communication with the Department of Homeland Security, is that Mr. Ruiz was born in Mexico.

However, as indicated in *Diaz*, a jury may not find Indian heritage solely 'on the basis of their names, appearance, speech, and testimony that they did not grow up on the [particular] Pueblo.'" 679 F.3d at 1187. The fact that CI Wager did not locate Mr. Ruiz among the Jicarilla Apache trial enrollment records is of little import, particularly because neither Jane Doe 1 nor Jane Doe 2 are enrolled with the Jicarilla Apache tribe. And the fact that an individual may have been born in Mexico does not preclude the possibility that he or she has Indian blood and is recognized as Indian by a tribe or by the federal government. Take, for example, the Tohono O'odham, a federally recognized tribe, that has tribal members on both sides of the U.S.-Mexico border.[5] It is also entirely possible for a person born in Mexico to have native roots with a U.S. federally recognized tribe, ancestral history with a tribe, and/or "some Indian blood." In other words, the mere fact of having been born in Mexico is not enough to establish non-Indian status. In *Diaz,* the Tenth Circuit noted that DNA testing would have been helpful evidence regarding ancestry. But based on the testimony from the alleged victim's father, rooted in his own personal knowledge, the Court determined this extra step was not needed. The evidence presented by the United States in this case to attempt to establish non-Indian status does not even come close to the type of

---

[5] Tohono O'odham Nation, History and Culture, available at: http://www.tonation-nsn.gov/history-culture/ (last viewed on Jan. 17, 2024) (giving history of the Tohono O'odham).

evidence that the Tenth Circuit found satisfactory in *Diaz* and is insufficient to establish non-Indian status.

Throughout these proceedings, the United States has raised a more recent Tenth Circuit case, *United States v. Walker,* 85 F.4th 973 (2023), when discussing the personal knowledge requirement to establish Indian or non-Indian status.  In that case, the defendant argued that the court erred in admitting the testimony of a law enforcement officer regarding the defendant's non-Indian status based on lack of personal knowledge. *Walker,* 85 F.4th at 980. The officer testified that he was "familiar" with the defendant and that he had "prior contacts" with the defendant. *Id.* at 980. The officer further testified that *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020) changed how he approached and investigation because now he must inquire if anyone is a member of any federally recognized tribe. *Id.* at 983. The Tenth Circuit determined, based on this evidence in the record, that it was not an abuse of discretion for the trial court to admit the officer's testimony.

The evidence cited in *Walker* falls dramatically short of the evidence the Tenth Circuit required in *Diaz* to show non-Indian status*.* Importantly, the Tenth Circuit reviewed the matter in *Walker* for abuse of discretion. However, even given the questionable determination by the district court in *Walker*, that jury still had more evidence by which to make a determination than what this Court has in Mr. Ruiz's case. Here, neither witness testified that he was familiar with Mr. Ruiz or had personal contacts with him. Before his trial testimony, Special Agent Himel had only see Mr. Ruiz one time during a January 9, 2024, court hearing. Criminal Investigator Rome Wager testified that he had seen what he believed to be Joel Ruiz's truck driving around town but did not mention any personal familiarity or prior contacts with Mr. Ruiz. Birthplace is not enough to establish non-Indian status. The United States has presented insufficient evidence to sustain a conviction.

## CONCLUSION

Federal Rule of Criminal Procedure 29(a) states that the Court must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. The evidence is insufficient here as to both charges because both charges have been brought under Section 1152, and the United States has not carried is burden to prove Mr. Ruiz's status. The United States has also failed to present sufficient evidence on the remaining elements of the two crimes with which Mr. Ruiz is charged from which a reasonable jury could conclude beyond a reasonable doubt that Mr. Ruiz is guilty of the charges against him. Accordingly, Mr. Ruiz respectfully requests that this Court grant his Motion for Judgment of Acquittal.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

***Electronically filed January 18, 2024***
/s/ Emily P. Carey
Emily P. Carey & Noah Gelb
Assistant Federal Public Defenders
Attorneys for Defendant